E-FILED
Tuesday, 21 April, 2026 08:36:49 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

KELLY A. LEE, as Special Administrator/Representative of BLAKE T. LEE, Deceased,

Plaintiff,

vs.

MATT SMITH, the Sheriff of Woodford County, in his official capacity, WOODFORD COUNTY ILLINOIS, and ADVANCED CORRECTIONAL HEALTHCARE, INC., an Illinois for-profit corporation,

Defendants.

Case No. 23-CV-1411-SLD-RLH

JURY TRIAL DEMAND

# SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, KELLY A. LEE, as Special Administrator/Representative of BLAKE T. LEE, Deceased, and as and for her cause of action as to Defendants MATT SMITH, the Sheriff of Woodford County, in his official capacity, WOODFORD COUNTY ILLINOIS, and ADVANCED CORRECTIONAL HEALTHCARE, INC., an Illinois for-profit corporation, states as follows:

## Introduction

1. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of the rights of the deceased, BLAKE T. LEE ("Blake"), secured by the United States Constitution.

2. On Friday, October 29, 2021, Blake was sentenced in Woodford County Circuit Court following a guilty plea for Driving Under the Influence. Following the court proceedings, Blake was transported to the Woodford County Jail to serve a 30-day jail sentence. Despite employees and agents of Woodford County having been told of Blake's alcohol dependence, he was placed into general population where another inmate witnessed Blake hallucinate and seize. On Saturday, October 30, 2021, after a jail deputy personally witnessed Blake experience a seizure, the jail physician was called who instructed Blake be placed into a detoxification cell for examination by the jail nurse the next day. On Sunday, October 31, 2021, the jail nurse observed Blake to be incoherent and recommended to to the jail physician that Blake be started on an alcohol withdrawal protocol. The jail physician agreed, and Blake was started on a detoxification regimen. On Tuesday, November 2, 2021, jail deputies found Blake unresponsive in his cell, emergency services were called, and Blake was transported first to Eureka Hospital and then to Carle BroMenn Medical Center, where he passed away on Wednesday, November 3, 2021. Per the autopsy report, Blake died from complications related to alcohol withdrawal while incarcerated. Blake's injuries and death could have been easily averted had jail deputies and jail medical staff placed Blake on alcohol detoxification protocol immediately upon booking, recognized the severity of his withdrawal symptoms, and promptly transported Blake to a medical facility for treatment immediately after the severity of those symptoms began to manifest.

**Parties**

3. Plaintiff, KELLY A. LEE., is the natural mother of the deceased, BLAKE T. LEE, and duly appointed the Special Administrator/Representative of BLAKE T. LEE under Woodford County Case No. 2023 MR 17.

4. Plaintiff's decedent, BLAKE T. LEE, was survived by the following next of kin as defined by the intestacy provision of the Illinois Probate Act, 755 ILCS 5/1-1, et seq., specifically the following: K.L. (minor daughter).

5. Defendant, MATT SMITH, was at all times material to this Complaint, the Sheriff of Woodford County, Illinois, and was charged with statutory responsibility and all management authority for the Woodford County Jail. Defendant Smith is sued in his official capacity.

6. Defendant, WOODFORD COUNTY, ILLINOIS, is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003)

7. No allegations are made in this paragraph.

8. No allegations are made in this paragraph.

9. No allegations are made in this paragraph.

10. No allegations are made in this paragraph.

11. No allegations are made in this paragraph.

12. No allegations are made in this paragraph.

13. No allegations are made in this paragraph.

14. No allegations are made in this paragraph.

15. No allegations are made in this paragraph.

16. No allegations are made in this paragraph.

17. Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC. ("ACH") is an Illinois for-profit corporation headquartered and doing business in this District that provides healthcare services at Woodford County Jail on behalf of Defendant Matt Smith and Defendant Woodford County. ACH is a final policy maker for Woodford County Jail. As agent of Defendant Matt Smith and Defendant Woodford County, ACH was at all times acting under color of law by and through its lawful agents.

18. No allegations are made in this paragraph.

19. No allegations are made in this paragraph.

## Jurisdiction and Venue

20. This is an action seeking money damages filed pursuant to 42 U.S.C. §1983; jurisdiction for Plaintiff's claims filed herein is based upon 28 U.S.C. §1331.

21. Venue is proper in this Court in accordance with 28 U.S.C. §1391(b), in that the claims arose in this District in Woodford County, Illinois and because Plaintiff and one or more of the Defendants are residents of Illinois.

## Facts – Common Allegations to All Defendants

22. On October 29, 2021, Blake was present in Woodford County Circuit Court with his father and attorney for a sentencing hearing related to a prior plea of guilty to a charge of Driving Under the Influence.

23. At the sentencing hearing on October 29, 2021, Blake was sentenced to 30 days incarceration in the Woodford County Jail.

24. After conclusion of the sentencing hearing on October 29, 2021, Blake was taken into custody by Deputy NAUGLE, at which time Blake's father advised Deputy NAUGLE that

his son was an alcoholic and would need to go through detoxification at the jail, due to the sentence Blake had received.

25. Upon booking into the Woodford County Jail, NAUGLE did not inform any correctional employee, including Deputies MASON, RENEAU, and RUE, of the information provided to him by Blake’s father.

26. That upon information and belief, if NAUGLE did advise one or more of the sheriff’s deputies booking Blake into to the Woodford County Jail, none of those individuals conveyed that information to any jail medical staff.

27. Despite Deputy NAUGLE’S failure to communicate what he had learned from Blake’s father, during the booking process at the Woodford County Jail, it was noted by one or more Woodford County Deputies and other Woodford County employees that Blake smelled of alcohol.

28. Unless a contracted nurse, physician, or other medical personnel is present, medical care and medical screening at the Woodford County Jail is performed by sheriff’s deputies who staff the jail. Despite Deputies MASON, RENEAU, and RUE smelling alcohol on Blake, and being aware of Blake’s conviction for DUI and past alcohol use, they did not contact any medical staff to inform that Blake might be at risk for alcohol withdrawal.

29. Blake was placed into general population unit F-7 by Deputy RUE on October 29, 2021.

30. During Blake’s stay in unit F-7, his cellmate, William B. Jackson, observed Blake experiencing visual and auditory hallucinations and physically stumbling around the cell and pod, commencing on October 30, 2021.

31. In the late evening of October 30, 2021 Deputy WAHLS observed Blake throw himself onto a wall within his cell. Deputy WAHLS requested Deputy HOUSEHOLTER investigate with him, and together they entered into Blake's cell and observed Blake sweating profusely with blood coming from his mouth while shaking from what they presumed was a seizure.

32. After Deputy HOUSEHOLTER performed a sternal rub, Blake gained consciousness and told Deputies WAHLS and HOUSEHOLTER he did not know where he was. Deputies WAHLS and HOUSEHOLTER both observed Blake talking to individuals or entities that were not present.

33. Deputy HOUSEHOLTER telephoned LOCHARD, the physician, who instructed Deputy HOUSEHOLTER to place Blake into a detoxification isolation cell for observation and to have OATMAN, the nurse, examine Blake the following day.

34. Both LOCHARD and OATMAN are employees of Defendant ACH.

35. Defendant WOODFORD COUNTY, ILLINOIS has a contract with Defendant ACH to provide medical care at the Woodford County Jail.

36. Defendant ACH markets itself to jails based on a cost-cutting model which includes procedures where it contracts with jails to provide minimal or no medical staff at the jail.

37. Defendant ACH employs an "on-call" doctor who only visits a jail in person on rare occasions and covers multiple jails in a large region by telephone.

38. This minimalist approach by Defendant ACH results in deficient medical attention and care to those confined in ACH covered jails.

39. Defendant ACH is aware that this approach has failed to provide adequate medical care to people in custody, resulting in treatable or manageable medical needs developing into serious life-threatening conditions for inmates.

40. Defendant ACH's policy, de facto policy, or custom of routinely and systematically denying necessary medical treatment to inmates at facilities where it was contracted to provide medical care in order to maximize its profits is so widespread that it has attracted national media attention. A CBS News investigation documented several instances of inmates dying from needless, preventable deaths, in facilities that contracted with ACH, as a result of ACH's refusal to provide proper medical care to inmates, and its refusal to permit hospitalization of inmates who are critically ill and are in obvious, desperate need of hospital care. https://www.cbsnews.com/news/broken-jail-healthcare-system-poses-danger-behind-bars/. The actions and inactions of the Defendants as alleged herein were in furtherance of ACH's policy, practice, or custom as described above.

41. Defendant ACH has a history and practice of refusing to send incarcerated individuals under its care for outside medical treatment as evidenced by the following incidents:

a.) In April 2017, David Brown died while in the custody of the Woodford County Jail. Mr. Brown was required to self-catheterize due to inability to completely void urine. Despite Woodford County and ACH being aware, Mr. Brown was refused transfer to a hospital despite multiple requests that he was unable to self-catheterize and that he was experiencing 10/10 flank pain. After Mr. Brown became so critically ill that he could not walk on his own or stand, instead of sending Mr. Brown to a hospital, he was placed into a holding cell where he died of acute pyelonephritis due to obstructive uropathy from retaining too much urine;

b.) In November 2013, Kenneth Collins was arrested for DUI was a BAC of 0.28 and upon admission to the jail in Jackson County, Indiana, Mr. Collins anticipated he would be suffering from severe alcohol withdrawal and requested hospital admission. Despite his delirium as a result of

withdrawal, with development of seizures, Mr. Collins was not transferred to a hospital by ACH medical staff;

c.) In March 2013 at the Grant County Jail in Kentucky, an on-call ACH doctor and on-site nurse failed to respond to Danny Ray Burden, a diabetic individual exhibiting threatening hyperglycemic episode during the booking process. Despite multiple signs of severe distress, Mr. Burden was not taken to the hospital until he was unresponsive. ACH lost their contact with the detention center as a result;

d.) In the case of Nicholas Banning, Mr. Banning was booked into Shelby County Jail in Illinois and told correctional staff he was opiate-dependent and would be having withdrawal. ACH did not implement or train staff on how to handle opiate withdrawal, and Mr. Banning was forced to undergo withdrawal with improper medical support which caused him to develop asphyxia pneumonia and required treatment for five weeks in an ICU;

e.) In October 2021, Philip E. Duncan turned himself in to the Douglas County Jail in Illinois and then was transferred to the Graham Correctional Center in Illinois. Mr. Duncan repeatedly requested medical assistance due to heart issues he suffered from that needed immediate medical attention, but he was never provided that medical attention by ACH and was refused transfer to a hospital and died from cardiac arrest while incarcerated;

42. Blake was assigned to an isolation detoxification cell by Deputy HUGHES at the direction of LOCHARD.

43. After Blake was transported to the detoxification isolation cell, Deputy WAHLS spoke with Blake's cellmate, William B. Jackson, who informed Deputy WAHLS that Blake had been talking to individuals not present and had likely seized the prior evening in his sleep.

44. On Sunday, October 31, 2021 at approximately 10:45 am, Blake was examined by OATMAN who noted Blake was speaking to an imaginary individual at his side, despite his denial of hallucination. After OATMAN communicated her examination results to LOCHARD, she was instructed by LOCHARD to place Blake on alcohol withdrawal protocol.

45. On Sunday, October 31, 2021, at 1:15 pm, Blake communicated to OATMAN that he was in Germantown Hills, despite being present at the jail in Eureka, Illinois.

46. Blake received his first doses of the medications ordered by LOCHARD at 7:00 pm on October 31, 2021.

47. Commencing on October 30, 2021 at or about 7:56 pm through November 2, 2021 at or about 1:04 pm, Blake was observed approximately every thirty minutes by one or more of the Deputies ELLIOTT, CURLEY, SCARBEARY, ERBENTRAUT, STUTZMAN, WAHLS, RENEAU, HOUSEHOLTER, SHAFFER, RIVEREA, MARSHALL, GENTES, SCHLOSSLER, and MASON.

48. During these thirty minute observation checks, one or more of the Deputies named in ¶47 observed Blake exhibiting behavior consistent with an individual going through severe alcohol withdrawal, including searching the walls for a way out of his isolation cell, speaking incoherently, staggering around the cell, seizing, and hallucinating.

49. The inside of Blake's detoxification isolation cell was, at times, captured on video surveillance recording and Blake's behaviors described in ¶48, as observed by the individuals performing the thirty minute wellness checks, were seen and recorded on camera.

50. On November 1, 2021, OATMAN examined Blake at 7:30 am and noted he was continuing to hallucinate and speak to himself. This was OATMAN'S only examination of Blake on November 1, 2021.

51. On November 2, 2021, OATMAN examined Blake at 8:10 am and noted Blake was disoriented as to time and place

52. On November 2, 2021, Deputy RIVERA performed a cell check at approximately 12:12 pm and observed Blake staggering around the cell.

53. On November 2, 2021 at approximately 12:26 pm, Deputy Jail Superintendent KEIM noted Blake slumping on the floor unresponsive. Deputy Jail Superintendent KEIM located Jail Superintendent WERTZ, who was having a conversation with OATMAN. KEIM told WERTZ and OATMAN of Blake's unresponsiveness.

54. WERTZ and OATMAN entered into Bake's isolation cell and found Blake slumped forward with his forehead on the floor. OATMAN noted Blake was not breathing and cyanotic; she began CPR at approximately 12:36 pm on November 2, 2021.

55. While awaiting the arrival of EMS services, Deputy MARSHALL and Deputy GENTES assisted OATMAN with use of an AED device and Ambu-bag.

56. Eureka EMS crew arrived at approximately 12:42 pm on November 2, 2021 and took over lifesaving efforts.

57. Eureka EMS departed the jail with Blake at approximately 12:58 pm on November 2, 2021 bound for Eureka Hospital and accompanied by Deputy Robert Plopper.

58. After Blake's departure via EMS services, OATMAN called LOCHARD at approximately 1:18 pm on November 2, 2021 to inform him of the developments.

59. OATMAN'S conversation at approximately 1:18 pm on November 2, 2021 with LOCHARD was the first time she had spoken to LOCHARD about Blake's condition since their initial conversation on October 31, 2021.

60. At no time during Blake's incarceration at the Woodford County Jail did LOCHARD personally examine Blake, make any effort to come to the jail to examine Blake, or

telephone or otherwise contact jail staff or OATMAN with questions about Blake or concern for Blake's well-being.

61. Blake was taken from Eureka Hospital to Bromenn Medical Center in Bloomington, Illinois, where he died on November 3, 2021.

62. An autopsy was performed by forensic pathologist J. Scott Denton, M.D., who concluded Blake died from hypoxic and metabolic encephalopathy due to multiple complications of alcohol withdrawal and chronic alcoholism, while incarcerated.

63. As a result of the unjustified, unreasonable, and unconstitutional conduct of each of the Defendants, Blake experienced pain, suffering, emotional distress, injury, and ultimately death. Each of the defendants acted intentionally, with malice, willfulness, and deliberate indifference to the rights of Blake and violated Blake's constitutional rights by willfully ignoring his serious medical needs.

64. Blake is survived by his minor daughter. As a direct and proximate result of each Defendant's unlawful conduct, Blake's daughter will experience into the future, pecuniary loss, including a loss of society. As a further direct and proximate result of each of the Defendant's unlawful conduct, Blake's daughter has experienced, and will continue to experience into the future, grief, sorrow, and mental suffering.

**COUNTS I – VIII**

(Counts I, II, III, IV, V, VI, VII, and VIII are removed and no allegations are pled.)

**COUNT IX**

***Monell* Claims – Defendant Smith (as Sheriff of Woodford County- official capacity), Woodford County, Illinois and ACH**

65. Plaintiff re-alleges Paragraphs 1 – 64 as if fully set forth herein.

66. The violations of BLAKE T. LEE'S constitutional rights under the Eighth Amendment to the United States Constitution, his damages and the conduct of the individual defendants, were directly and proximately caused by the actions and/or inactions of the Woodford County Sheriff, Woodford County, Illinois, and ACH, which have, with deliberate indifference:

a) failed to establish and/or implement policies, practices and procedures to ensure that inmates at the Woodford County Jail receive appropriate medical care for serious medical needs, including alcohol withdrawal, and if necessary, health care services outside the jail;

b.) failed to establish and/or implement policies, practices and procedures to ensure that inmates at the Woodford County Jail receive appropriate housing assignments with appropriate monitoring based upon their needs, including alcohol withdrawal;

c.) failed to establish and/or implement policies, practices and procedures to ensure that deputies, medical staff, and other staff at the Woodford County Jail receive appropriate training on how to recognize, manage, and treat inmates with commonly seen medical conditions in incarcerated individuals, including alcohol withdrawal;

d.) failed to establish and/or implement policies, practices and procedures to ensure that deputies, medical staff , and other staff at the Woodford County Jail receive appropriate training on how to recognize the signs and symptoms of severe, life-threatening alcohol withdrawal, and what actions to taken when such signs and symptoms are noted in an inmate housed in the Woodford County Jail;

e.) failed to establish and/or implement policies, practices and procedures to ensure that inmates at the Woodford County Jail receive appropriate medical care for serious medical health needs, including alcohol withdrawal;

f.) failed to adequately monitor the deteriorating mental and medical health conditions of inmates. Specifically, sheriff's deputies and other staff routinely fail to conduct their mandatory cell checks and even when they are conducted, the sheriff's deputies and other staff do not properly conduct the cell checks to ensure the inmates' well-being;

g.) failed to ensure through training, supervision, and discipline that medical staff at the Woodford County Jail, in necessary circumstances, makes a referral for immediate health care services outside the jail;

h.) failed to ensure through training, supervision, and discipline that sheriff's deputies, medical staff, and other staff adequately communicate and document inmates' deteriorating mental and medical health conditions;

i) failed to ensure through training, supervision, and discipline that sheriff's deputies, medical staff, and other staff properly respond to inmates' deteriorating mental and medical conditions;

j.) failed to contract for medical health services in a manner that financial incentives would not interfere with referring inmates for health care services outside the jail.

67. As a direct and proximate result of these failures, Blake sustained injuries and suffered, followed by death on November 3, 2021.

WHEREFORE, Plaintiff, KELLY A. LEE, as Special Administrator/Representative of BLAKE T. LEE, Deceased, prays this Court for the entry of judgment in her favor and against the Defendants, MATT SMITH, as Sheriff of Woodford County in his official capacity, WOODFORD COUNTY ILLINOIS, and ADVANCED CORRECTIONAL HEALTHCARE,

INC., an Illinois for-profit corporation, for compensatory damages and for punitive damages, as eligibility allows, and prays for her attorney's fees and costs in accordance with 42 U.S.C. §1988, and prays for such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

**Prayer for Relief**

WHEREFORE, the Plaintiff seeks judgment as follows:

a. Compensatory damages against each of the Defendants herein;

b. Punitive damages against Defendants sued individually;

c. Attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

d. Such further relief as the Court deems just and proper

Plaintiff, KELLY A. LEE, as Special
Administrator/Representative of
BLAKE T. LEE, Deceased,

By: /s/Philip M. O'Donnell
Philip M. O'Donnell
Philip M. O'Donnell (ARDC #6225759)
Christopher H. Sokn (ARDC #6297663)
KINGERY DURREE WAKEMAN
& O'DONNELL, ASSOC.
416 Main Street, Suite 1600
Peoria, IL 61602-1166
Phone: (309) 676-3612
Fax: (309) 676-1329
Email: pmodonnell@kdwolaw.com
Email: chsokn@kdwolaw.com